The Honorable. The United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is Eunice Field v. Allison Hallett, Appeal No. 20-1571. Attorney Kaddick, please introduce yourself for the record and proceed with your argument. Elizabeth Kaddick for Eunice Field. Proceed. Thank you. In this case, defense counsel was going for a conviction of second degree murder. Nonetheless, what he did was submit two confessions, one that entailed all of the elements of free meditation and one that contained all of the elements of extreme atrocity. His reasons for not filing a motion to suppress was the first... Counsel, did trial counsel ever request a competency evaluation? No, he did not. And that's despite testifying at the motion for a new trial hearing that when he attempted to speak to Eunice Field in preparation for trial, what he was describing were bipolar disorder symptoms. She would speak and speak and speak, nonstop, all excited, but not communicating anything relevant. Ms. Kaddick, as I understand it, the expert witness which was called in the post-trial proceedings seeking a new trial on the grounds of IEC made no claim that she was not competent. Is that correct? Well, that's correct, and that's because he testified before the defense attorney... No, no, no. You are stuck with your expert's testimony, so we are supposed to derive from the one comment made by defense counsel that she was incompetent to stand trial. Is that the argument? Yes, yes, and I will certainly say that is not the strongest argument. That was one where I argued that it was clear from his statement that she didn't know what was going on. He should have then filed a motion to have her competency determined. Was defense counsel specifically asked during that hearing if there was reason for him to question her ability to understand the proceedings or to assist counsel in preparing a defense? He was not the type of lawyer that one would expect after testifying to those symptoms and her inability to work with him or understand what was going on, that requiring him to be able to say she wasn't competent to assist me with the trial, it's not appropriate to think that he's going to consider that, particularly because he was, in effect, so many other ways. Ms. Kaddick, I think defense counsel, that there's evidence that he thought she was competent to stand trial. You have said this isn't the strongest of your arguments, and in fact you led with the submission of the two video-recorded confessions at both of the police stations. Would you like to turn back to that argument? Yes. As the case law has repeatedly said, there's nothing so potent as a confession. And so he had, without the assistance of an expert, he determined that it was beneficial to his request for a second-degree murder conviction to admit the Brockton interview where Ms. Field, through questioning, stated that she intended to kill the victim and brought a knife with her. It's unsound for any criminal defense attorney to think that showing the jury that video would lead to a finding of not guilty. Ms. Kaddick, the SJC disagreed with that argument, correct? It found that this was a strategic choice by trial counsel, putting aside the question of whether he should have consulted with an expert. When it came to these issues, the SJC, if I remember correctly, said this was a reasonable choice, and in any event, there was no prejudice because there was other evidence, namely her writing in her journal the night before she commits the murder, and her Facebook post, and a few other things, that she intended to murder the woman she murdered in the way she did. So under the Adipa unreasonableness or error of law standards, you've got both issues to deal with. Let me follow up on that, on Judge Lynch's question, so you can answer it in one answer. But why is that trial decision so benefit the unreasonable? Well, why was the trial attorney's decision so unreasonable? Is that what you're asking for, the feedback? Yes, correct. Yes, okay. Because he said that he wanted the jury to hear she was bipolar. There was plenty of evidence she was bipolar, her partner of 20 years or so. A witness who the defense attorney didn't even know about, who walked up to him in the middle of trial, you know, why hasn't anyone contacted me? I'm all over Facebook. I've been communicating with her. And to tell you that she's been paranoid recently, I can tell, and she's not taking her medications. And she talked about how Eunice had long-standing bipolar disorder, had been admitted to the mental health hospital for her diagnosis three times over the previous 10 years. So the jury already heard it. So they didn't need to hear her statements about the elements of premeditated murder to hear she was bipolar. And the fact that he wanted the jury to know that she was odd, he had an expert, which is one of the things the SJC neglected to consider when they were talking about their prejudice. About four minutes left, four minutes. Okay, is that if he had consulted with an expert, the expert would have told the jury what Dr. Land had stated in his testimony at the new trial motion, which is that she was not logical. She was not coherent. She was not rational. She didn't make voluntary statements. And she had symptoms of psychosis, which, since this was recently after the crime, he related back to the time that she was psychotic. And this was due to her mental health diagnoses, the trauma, and not taking her medications and co-receiving abuse, which he said can bring out psychosis in people who have a major mental health diagnosis to begin with. And so what the SJC did not say in its evaluation of the evidence is that that evidence, which I submit, does not equal proof beyond a reasonable doubt of premeditated murder. What the trial attorney had to do was raise a reasonable doubt of first-degree murder. And he defeated that by having those two confessions played to the jury. Ms. Kaddick, again, the SJC found it was not an unreasonable trial tactic. You know, a picture is worth a thousand words. The jury got to see that she was, at times, apparently befuddled, that she wanted food, that she was vague, that she looked up in the air, those sorts of things. So, again, you may say it might have been preferable for him to put on an expert, defense expert, who would have testified to the things you just said. But that does not make the choice an unreasonable choice. Well, first, I'm not sure that the SJC clearly said that it was a sound trial strategy. In the meat of their argument, they said, we don't have to go there because we find that. I think there was a footnote that said that it was his strategy. The question isn't soundness. The question is whether it was so out of the ordinary as to violate the first prong of the ineffective assistance of counsel claim. I think that this court finds that that's what the SJC found, and certainly that's what the trial court found, that it was a reasonable trial strategy. I think that really no reasonable jurist should think that an attorney who's representing someone, who has the skill that a lawyer should have to represent someone in a first degree murder trial, would think that it's worth having the jury see that she's odd and slow in speaking, and that that outweighs the prejudice of having her admit to the elements of premeditation. Wasn't there a question from the jury which signaled that they were actually thinking about this? Absolutely. Throughout the trial, this was the trial in which the judge allowed the jury to ask questions of a witness during trial. They asked questions during trial, and during deliberations, they asked to get instructed on insanity, on the insanity defense. This was not even a defense or a jury instruction. The defense attorney asked for it was the judge who said, well, I think we have enough here that unless you object, I'm going to give an instruction on insanity defense. Their question to me means that they paid a whole lot of attention to this issue, and they weighed the evidence that was before the jury, and certainly considered her state of mind. But that doesn't defeat her argument now. It just shows that the evidence was not so overwhelming. Contrary to what the SJC said, the evidence was not so overwhelming that the jury would not have found her not guilty of first degree murder had counsel been competent, had he kept out what he should have kept out, and had he presented in expert testimony what he should have presented. That's time. Thank you, Ms. Kadich. At this time, Attorney Kadich, please mute your audio and video. And Attorney Braneck, please unmute your audio and video and introduce yourself to begin. Judge Lynch, before we begin, is there some way we can get that feedback out of the recording? Jim? Yeah, I'm also getting it here. Yeah, I am not. I wonder, am I possibly the source of it? Hi, Judge. I don't know where the source was. IT, can you confirm that – are you hearing feedback now? Okay, so this is Dan Toomey. I'm calling Cases for the First Circuit. Can you hear a feedback when I talk? I can't. It may have been the other attorney's device. Okay, okay. Thank you. Please restart it and then tell us, and then Ms. Braneck, you can proceed at that point. Proceed. Good morning. May it please the Court, Assistant Attorney General Maria Braneck for the respondent. This court showed that the district court did not route Ms. Fields' ABC petition. The SJC reasonably regarded her ineffective assistance of counsel claim, finding that she was not – Excuse me, if I may, I'm sorry to interrupt, Judge. We're getting a lot of feedback again. I'm only getting every other word. Yeah, it's actually cutting out. IT, I don't know if we have a fix. Do we? Yes, it's the feedback coming from my end. What would you – Yes, do you want me to take off the headphones? Okay. Okay, I can try to restart. May it please the Court, Assistant Attorney General Maria Braneck for the respondent. Okay, just a minute. That sounds a little better. It's a little better. Okay, let me diminish the noise even more. How about that? Okay. I can't hear. Let me try again. Does this sound better for everyone? Let's try this, okay? All right. Could you begin again, please, Attorney Braneck, if it's possible? Would you like me to introduce myself again? Proceed. Okay. This Court should affirm the District Court's denial of Eunice Fields' habeas petition. The SJC reasonably rejected her ineffective assistance of counsel claim, finding that she was not prejudiced by trial counsel's decision not to hire an expert to assist with the defense. Applying the doubly deferential standard of review under Aetba and Strickland, this Court should deny relief because the SJC's finding of no prejudice was reasonable and correct. In addition, if this Court reaches the performance prong of Strickland, it should find that counsel's strategic decision not to hire a forensic psychiatrist was a reasonable one and did not amount to deficient performance under Strickland. Ms. Braneck, you may be better off just relying on your first ground. Even the trial judge here and the SJC thought that not hiring an expert was unreasonable under the circumstances. So, do you really want to get into those issues? I think that the simplest and the strongest way to resolve this case for this Court is to analyze the prejudice prong of Strickland under the doubly deferential standard, as I said. And I would point this Court to your recent decision in the case of Lang v. DeMora, which involved different circumstances. But the following quote, I would say, is directly on point. This Court said, Because the failure to investigate constitutes the alleged dereliction by counsel, we are required to consider what would have happened but for that dereliction. And if it turns out that the investigation would not have led to any information, that counsel would have used a trial, and his dereliction can hardly have caused prejudice. As in this case, the post-conviction expert, Dr. Land, did not testify that the petitioner had been incapable of forming the required intent for deliberate premeditation in order to be convicted of first-degree murder. And therefore, there can be no prejudice because there was no such testimony that would have been available had counsel investigated. Was the expert asked if she was capable of performing premeditation? He was not asked that question, and he did not. He specifically, in his report and in his testimony on the motion for new trial, spoke to her inability to act with extreme atrocity or cruelty due to her mental illness. And this was an attorney different from trial attorney? Yes, correct. It was the appellate attorney who was Ms. Caddick, who is the same attorney here on habeas. And so, given that there is no testimony of inability to premeditate, and given the otherwise strong evidence of premeditation that both the state trial court, the SJC, and the district court in this habeas action pointed to, such as the petitioner's plan to meet with the victim on the morning of the murder, the Facebook post which implied a plan to hurt the victim, the note that the petitioner wrote to her former partner, Ms. Williams, saying that the victim would get what she deserved for coming between them, and the testimony from several witnesses that the petitioner had been upset at the victim because of certain things that happened, including what she perceived as her coming in between her and her partner. All of that evidence of premeditation came into the case apart from the interviews, which the petitioner claimed should have been suppressed. And an expert, had one been consulted, would not have provided testimony that, despite all those actions, the petitioner was not able to premeditate due to her mental illness. And therefore, that finding of no prejudice by the SJC is correct and certainly is reasonable. So, that's on the first point, that the council should have consulted an expert to present the mental impairment arguments. There's no prejudice for the reasons that I just talked about. On the second point, as to consulting an expert in moving to suppress the interviews, again, the SJC's conclusion was reasonable in light of the strong evidence of premeditation in this case that did not come from the interviews. And although the Brockton interview contained evidence of premeditation, even without the interviews, the jury could have convicted based on premeditation. And so, there's no prejudice here. Five minutes remaining. Five minutes. The petitioner has not shown that the SJC's analysis on this point is so unreasonable as to be beyond the possibility of fair-minded disagreements. The Bridgewater interview contained evidence that went to the atrocity or cruelty part of the argument. But even if this had been suppressed, the first-degree murder conviction would stand based on the deliberate premeditation arguments. And on the performance prong, again, this court did not reach it. But if it were to reach it, it would analyze it de novo. And on this point, the SJC said that it did not decide whether it was a reasonable decision to introduce the interviews. But an argument can certainly be made that it was a reasonable one. As Judge Lynch pointed out, counsel's approach was that a picture or video... We don't need to go there, do we? You do not. I mean, it seems to me that there were a lot of questionable decisions made with respect to how this case was going to proceed. I mean, the problem is we have this doubly deferential standard and we're stuck with the record that we have. As Judge Lynch said at the beginning of this proceeding. You will find... I'm sorry, Judge Helby. No, go ahead. You will find that federal habeas courts prefer not to say more than we have to say in writing opinions and publishing opinions. And so your office perhaps should take a lesson from that. I agree with Judge Thompson. There were some questionable decisions, but that is not the issue for the federal habeas court. Judge Helby. Yes, my question, and again, maybe I'm backtracking you a little bit, but I'm looking at the SJC's opinion. And the SJC concludes that counsel unreasonably failed to consult with the mental health expert for trial. But again, there's no prejudice. But my question is, how do we know there is or there is not that prejudice? In the first place, he did not consult with that. He acted unreasonably. That is the concern I have. So if you could address that. And I think you discussed it a little bit, but if you could specifically, it's almost at the end of the opinion of the SJC. Yeah, and that's, you know, looking backwards at how the trial, you know, it's necessarily kind of a hypothetical analysis of how the trial would have gone had that testimony been before the jury. But I think in this case, it's actually easier to analyze than in some others because you specifically have an expert who testified at the motion for new trial hearing, a post-conviction expert who, you know, we presume that the petitioner tried to find the best possible expert to present her case at the post-conviction hearing. And that expert did not express an opinion that the petitioner had lacked criminal responsibility. That argument is not here. He did not opine that she had been incompetent to stand trial. And perhaps most importantly here, he did not opine that she had been incapable of deliberate premeditation. And so, as this court would ask whether the SJC reasonably decided that there had been no prejudice, you could rely on that absence of testimony. And as I pointed out earlier to this question of would the investigation… All of those things, I mean, it just puzzles me that the expert who testified at the hearing wasn't asked to opine on any of those things unless there was reason to think that asking would not have produced the results the defendant desired. Just that that's the most reasonable explanation of why he wasn't asked. Again, given all the evidence that I discussed earlier of the way that the petitioner had planned and premeditated, there just seems like there's simply no way for a mental health expert to make the connection between her mental illness… That's time. …and her ability to act with deliberate premeditation. So that's why there's no testimony to that effect. Are there any further questions from the panel? No. Thank you. Thank you. That concludes argument in this case. Attorney Kaddick and Attorney Greenick should disconnect from the hearing at this time.